First argument this morning is in K.A. v. Pocono Mountain School District. Ms. Collins. Yes, thank you, Your Honor. May it please the Court, I'm Keely Collins here today on behalf of the Pocono Mountain School District. I'd like to take this time, first of all, to reserve three minutes of rebuttal after the appellee's argument. Granted. I also wanted to take this opportunity to thank the Court on behalf of my client for this opportunity to present our position, which we believe is based upon grave concerns for public school districts moving forward here in how we're to go about applying our policies with respect to non-school solicitation materials and how we will go about revising those policies. We ask this Court to consider overturning the decision of the distribution of non-school solicitation materials. We believe that this analysis was based upon a misperception of the school district's application of policy. The policy at issue was School District's Policy 913, which governs the distribution of non-school solicitation materials. This particular material was the distribution was initiated based upon a request to the central office to deliver non-school solicitation materials. This is fundamentally different from the type of communication in Tinker, which was a student's symbolic speech or the kind of communication at issue in Fraser, which was student's spoken speech. So the content matters? Your Honor, in this case, content does matter, but also what we're presenting to the Court here today is the student did this communication within a specific structured forum that was a student's speech. And according to the Waltz case, which was a Supreme Court case, there is a fundamental distinction between student speech that a student would make, per se, turning to a... So it would be different if it was a flyer that was handed out to attend a rally to protest America's involvement in Afghanistan? Well, I think that that does hit upon an issue that goes to the heart of this case, Your Honor. And that's the difference between expressive student speech versus non-expressive student speech. In the circumstance that you're describing there, it sounds like that might be student expression. Here we have a flyer that is entirely devoid of any kind of personal expression. It's just simply a solicitation material from an organization to attend ping pong, face painting, secular events. What's expressive about inviting someone to a pizza shop for a birthday party? There is nothing expressive about that, Your Honor. And the school has allowed that? The school has allowed that because there was testimony in the District Court that there is, and this is an important distinction for us to make because it's our application of policy, that an invitation to a pizza party would be a personal invitation that in this circumstance would be placed in a sealed envelope and distributed to students individually. That would be a personal invitation. Like, for instance, if a student wanted to invite other students to his or her birthday party, that would be a personal matter. So you can invite someone to a birthday party but not a Christmas party? No, Your Honor, that's not the distinction we're making here. Just to clarify, the difference there is that under the school district's policy, if a child wanted to, in this elementary school context, if a child wanted to invite other children to her birthday party, she would put the invitations into sealed envelopes and place them in the mailboxes. If a student wanted to distribute non-school solicitation materials, they'd have to go to the main office, make a request, and it would have to be distributed as a flyer. But you're talking about the procedure. We want to focus on what is student speech, whether expressive or non-expressive. Yes, Your Honor. I'd like you to focus for a minute on this. Would you argue that the school can prevent students from handing out any written materials to other students based on 913? The answer would presumably be no, you don't. Right, correct, no, Your Honor. So, in this case, it's to a Christmas party, and your concern is really that it didn't originate with the student. But let's change the facts just a little bit. Let's say it was, you know, finger-painted on a sheet of paper, come to my Christmas party, learn about Christ. How about that? Okay, what would the answer be there, she hands it out in her class? Because this was only distributed to her class, right? This was not, you know, distributed beyond that. Correct, Your Honor. With regard, there are two questions there I feel I should answer. First of all, with regard to the finger-painting, that's not the kind of speech we're talking about here. What we're talking about is the kind of speech where a non-school organization reaches into our school, particularly our young children, and distributes a solicitation material. If a student makes a finger-paint and wants to distribute that around the class, I don't know... No, a finger-painting inviting people to her Christmas party to learn about Christ, that's what I said. That would not be governed by policy 913. That would be considered student speech, and the distinction there is that this is a flyer that was printed by a non-school organization. It's a non-school organization's party. The school district, this is an organization that has no... It's her party at her church, just like the other party was a student's party at a pizza shop and a student's party at a bowling alley. You're saying that there's... I'm trying to get at what the distinction is here. If the school wants to say, look, we're about reading, writing, and arithmetic, and the Boy Scouts, the Girl Scouts, the church, the synagogue, just do it on your own time. Maybe that'd be fine, but I'm struggling with how you allow the pizza shop party and the bowling alley party and not a party that happens to be at a church. There was no religious distinction made here, and there was pretty definitive testimony in the district court that the decision here was not based upon religion. When this flyer was submitted to the central office for consideration, our superintendent decided that he didn't... He was familiar with the bowling alley? I think there was testimony in the district court that those were organizations that had prior affiliations with the school district. Our superintendent gets over 100 flyers per year to review and to decide whether he wants to distribute them, and that's just in the elementary school context alone. Okay, so what? Well, I guess our main problem with this is we have to be able to protect our school children from an influx of outside organization advertisement. I mean, what... And a great example is what if this would be the party, the Christmas party of the Aryan Nation that they want to distribute to all of our school children? We have to have a mechanism in place where the superintendent can review the solicitation before it's distributed to school children. You're worried about an outside group. Let's take the bowling alley example that we mentioned a moment ago. I own RA Bowling Alley. I, as an inducement to get more kids involved, say to my close friend, Judge Hardiman, you've got three kids. Can they all have their parties at my bowling alley? So it doesn't say RA Bowling Alley is soliciting this, but his kids now go to your school and say, we want to have our bowling party at RA Bowling, and we want to invite all of our kids. Now, a third party is clearly involved. I've seen this before, but you're saying there's a distinction in speech that originates in this scenario as opposed to the scenario that we have in this case. And I'm not sure I understand what the distinction is that you're drawing in those two scenarios. Okay, I will explain that distinction. In the elementary school, and there was testimony of this at the district court in the transcript, as sort of a favor to parents, I guess. On some occasions, they have allowed students to distribute personal invitations and sealed envelopes to be taken home. That's different from the flyer scenario. The flyer scenario is a non-school organization's reach into our schoolhouse, and that's our issue today. Tinker cannot really be practically applied in these circumstances because these solicitation materials are to be taken home with the student. So any disruption that they would cause would be caused, if at all, in the community. So if Tinker... Well, that's even stronger than Tinker. I mean, Tinker, the risk was that the arm bands would cause a disruption at school. Why does the school care if there's a disruption in the community? That's not the school's bailiwick. It's not so much that we feel we have a concern within the community. Our concern is the ability to regulate the non-school organization's reach into our schoolhouse, and we can only do that through a forum analysis. All right, and you've done that. You've shut it down, right? You've amended the policy. You're saying we're not going to have this anymore. We have shut down the... But there seem to be exceptions that... What's troubling me, just to cut to the quick, is your exceptions seem to invite content and viewpoint discrimination, which is anathema to the First Amendment. Exactly. Well, the reason why we shut down the forum entirely was because we're aware of those concerns. Personal birthday party invitation distributed in a student envelope we considered a personal matter. So that's still okay? In the elementary school, but that's... I think that... So this plaintiff could... As long as she folds it up and puts it in an envelope, it's okay. She can invite children to the Christmas party next year, this year. With this particular flyer? Yes. We're not necessarily saying that that would be excluded, but that would have been subject to review under Policy 913 as a non-school solicitation. Why? If it's in a sealed envelope... Why isn't that a personal invitation? I thought the distinction you made a few minutes ago was that we have two types of materials. We have the personal invitation materials. Those are handed out individually in sealed envelopes. And then we have the flyers, which sort of bespeak a type of leafleting. You know, just hand them around willy-nilly in the school. If that's the critical distinction, then why can't this plaintiff or anyone else in the school fold up a piece of paper, put it in an envelope, and say, I'm having a Christmas party at my church. Come along. The critical distinction here, Your Honor, is the difference between personal student speech and the speech of third-party organizations. The flyers distributed by third-party organizations are what we're concerned about. We need to have some ability to regulate that, and we believe that the Tinker Standard would preclude authority there. Is it part of the record that the young lady wanted to share her faith with others? How is this not a religious message with clear First Amendment undertones? I'm missing that part. Okay. Yes, that is a critical distinction, too. I see that my time's almost up. If I can just switch. Okay. Okay. Well, the district court didn't even find that this would – the district court said that she wanted to invite her friends to church. But when the district court made its findings a fact as to what was on the flyer, the district court listed things such as ping pong, face painting, purely secular things. And even the Supreme Court's acknowledged that Christmas is not inherently religious. When the fifth-grade classroom teacher looked at this flyer, on its face it was just purely secular speech. I mean, there was no knowledge of what the religion was, that it was even an invitation to church, because all sorts of functions can occur at a church. This was, at the time, clearly a flyer that fit within Policy 913. So it has to be overtly a religious message for it to be covered as student speech? Well, overtly a religious – We know that can't be – you have to conceive that point, right? The Supreme Court has said the First Amendment protects the banal and the inane. In fact, most speech isn't high-value political or social speech, right? Sure. And I think the testimony is pretty clear in the district court. There was never consideration of religion in the decision to review this flyer. Yeah, but in the facts before the court, it was testified to that part of the purpose in distributing the flyer was for the young lady to have an opportunity to share her faith. Did I misread that? Well, we believe that that was a finding that the district court made, but it was not based upon the specific language of the flyer. In the Morse case, it sets forth a standard of review for school districts to decide when to apply prerogative, or at least that's our reading of the Morse case. And in the Morse case, when a teacher – I mean, that case applied to a particular situation, the bong hits for Jesus banner. But when a school administrator is reviewing a not symbolic speech, but specific written speech, there should be some deference paid to the reasonable judgment of that administrator. And based upon the language of the presentation from a non-school organization, just like any other non-school organization inviting kids to an event. Okay, we'll hear you on rebuttal, Ms. Collins. Thank you. Mr. Cortman. May it please the Court. Good morning, Your Honors. My name is David Cortman. I represent K.A., the plaintiff at the Lee here. There are several problems, I think, with both policies on their face and as applied. And as Your Honors pointed out, one of the main problems is they are both content and viewpoint based on their face and as applied to the plaintiff here. I think one quick question about the religious invitation. There is sworn unrebutted testimony by the plaintiff that the reason that she was handing out these invitations to the church Christmas party was to share her faith. Obviously, that is unrebutted, has to be taken as fact. That is in both an affidavit in the record at J.A. 165 and in the sworn complaint at 176. And the young lady specifically said it was her own idea to invite her friends to the Christmas party because that's how she shares her faith with others. But interestingly enough, even without the religious aspect, this speech is still protected under Tinker. Tinker obviously had no religious component to it, so it's both protected as free speech under Tinker and as religious speech. So I don't think that argument really gets the defendants anywhere. The school district, I think, overstates its problems with controlling the outside forum for community literature distribution. It has the power to completely shut down the forum and not allow any distribution by community groups, no matter who it has to come from. But they've chosen not to do that. Their policy 913 wouldn't even need to be in existence if the forum was closed to community groups. Yet it still exists and allows flyers as long as those flyers are approved by the school. And so they actually, what they've done is they've given themselves unbridled discretion to determine which community flyers are allowed in and which are not. That's why this seems to me to be not a Tinker case. I was a little puzzled by the district court's analysis, frankly. Because this seems to be more of a forum case. If you want to allow some of it, you have to allow all of it, unless it's unprotected by one of the carve-outs, i.e. Morse, Frazer, or if it's deemed the speech of the school, like Hazelwood, B. Colmeyer. I mean, is this really a Tinker case? Or isn't this just a matter of discriminating against the school? Or discriminating against a certain type of speech that is viewed unfavorably? Well, I would say it is a Tinker case, in our opinion. But even if this was deemed to be community speech, it would still be unconstitutional, so it doesn't help the defendants. But the reason I say it is a Tinker case is because I don't think it's that difficult of a question. What you have to look at is who's asking to speak? It's really not that complicated. If the church came to the school district in bundles of flyers in 20s, which is what they do, and give them out to all the classrooms and say, would you distribute these under your forum, put them in the cubbyholes, what they do is they give bundles for each class and they distribute, but the request comes from the church. This speech is the young lady taking a handful to school and telling her friends, hey, would you come to my church's Christmas party with me? There is a problem with that, though, because some kid who's, you know, my dad's a landscaper. He's going to show up at school and he's going to want to hand out, you know, 185 pieces of paper that say, you know, 20% off Hardeman's landscaping. I mean, schools don't have to allow that. They don't have to allow it if it's coming from the landscaping business. I believe they do have to allow it. Or any business or any church or any synagogue or any boys club or Girl Scouts. They can shut all that down, can't they? Well, they can, but not if it's coming from the student, because the problem is that rule would swallow up Tinker. In other words, the majority of speech coming from students or anyone is third-party speech. But Tinker's not a leafleting case. Isn't there an important distinction between someone handing out 185, you know, coupons and somebody wearing a black armband? Tinker doesn't sanction the 185 coupons or flyers or whatever. Well, I think Tinker does cover leafleting, and the reason is it specifically talks about it in the opinion. And so, and if I may, I'll read a short portion from Tinker. First of all, Tinker stands for the proposition that schools are required to accommodate student speech. Students are required to be there, so what the school says is this is among those activities that the school is required to allow is personal intercommunication among the students. It goes on a few paragraphs later to say, we do not confine the permissible exercise of First Amendment rights to the four corners of a classroom. Tinker contemplates the literature distribution. So let me ask this question. So if we determine that this is not student speech, then it's forum analysis. But because it is student speech, you would persist that it's a Tinker analysis. So regardless of the analysis, I believe Plaintiff prevails. But the reason that it's important that this falls under Tinker is if you look at the many cases that have discussed literature distribution in public schools by students, the majority of those are third-party materials. And so just because the third party has a party, produces the materials, it really doesn't matter. Morgan v. Swanson, a recent Fifth Circuit case, they were handing out pencils that said, Jesus loves you, clearly third-party produced and written. There's not a commercial aspect to that. I mean, that's a person expressing his or her view. Well, so is this. And here's what we have to keep in mind. The speech in question is not the speech that's going to occur at the Christmas party. The speech is the invitation. Would you like to come with me? That's why this is personal speech. So whatever is said at the Christmas party, whatever the church does is irrelevant. The line is, would you like to come to my birthday party, which is still allowed under the policies. So you can invite someone as a student under policy 220, which covers student speech. You can say, would you come to my birthday party at my house? Would you come to my birthday party at Chuck E. Cheese's? Would you come to my birthday party at the church? There's a line drawn. Well, there shouldn't be a line, because constitutionally speaking, it doesn't matter where the party is being held. It's the invitation. They can regulate the manner, though, right? They can regulate the manner. Well, this is not a reasonable time, place, and manner prohibition. The reason is, by definition, that has to be content neutral. This is a content-based distinction, because it picks and chooses which flyers are allowed. So it's not a proper manner exclusion. So your position is the testimony with regard to sharing your faith informs us, but it's not dispositive, because the flyer in its current form constitutes student speech. Oh, absolutely, and there's another religious component, so it's protected twice. And I think, as the plaintiff has testified, the way I share my faith is inviting students to church and different activities. But there are many other cases, if I may for a minute, that talk about distribution of third-party flyers to, for example, Johnston Lerner v. O'Brien recited, that was a flyer to an alternative Halloween event as a church, was considered to be student speech under Tinker. J.S. v. Holly Area Schools applied Tinker for a Christian summer camp flyer, Wright v. Pulaski, to a church swimming event. All of these cases were students passing out flyers to church events that were deemed by those courts to be covered under Tinker, because the speech was the invitation to the event, not the speech that would occur at the event itself. Let me ask you this question. Even if we consider the flyer to be student speech, part of the relief granted to you by the district court was that you could, or rather, K.A., could distribute the flyer through the take-home folders and the literature distribution table. That seemed to be outside the scope of a Tinker analysis. What's the basis for that? Was that just a throw-in? I think that's because that's the way the district described how they distributed materials. They had a table. They had cubbyholes. Our position is, and we agree, our position is the student should be allowed to hand flyers to other students during non-instructional time. If they want to eventually put them in cubbyholes or something, that's fine, but it really is a separate issue. We're not asking for access. We believe that the cubbyholes are set up for community groups. Now, it's fine if they want to hand them out and put them in the cubbyholes, but our position is that a student has a right to hand a flyer to another student during non-instructional time. And interestingly enough, both of these policies, 913, which is originally the community distribution policy, now also applies to student-to-student distribution, as does 220. So both policies now apply to student speech. 913 also applies to community speech, but they both contain the same standard, the same unconstitutional standard here. So the district prohibits KA speech now both under 220 and under 913, even though it continues to allow invitations to all kinds of birthday parties, holiday parties. But, you know, you talk about 913 and 220, but the district court didn't seem to address the amended 913 or 220 in this ruling. The district court actually, you're correct, did not address 220, but did address the revised 913. And in fact, if you look at, I believe it's at JA 15 and 16, the paragraphs it lays out of the revised policy are the exact paragraphs that were challenged here. What's wrong with the revised policy? Let's assume for the sake of argument that the initial policy was defective, and the school has said, all right, well, we're just going to focus on the basics, and we're going to block all this stuff. Why doesn't the new policy effectuate a content viewpoint neutral approach? Well, I'll speak to both policies. 913, the reason is, is number one, it still prohibits KA's flyer, so we still have the same injury here. As far as the content and viewpoint-based problem. All right, let me just stop you on that for one minute, because if it's not a Tinker case, it's okay to prohibit KA's flyers as long as they're prohibiting all the other ones. If it's not a student case, that's correct. Okay, and there's no exceptions or loopholes or any problem there with that policy? Well, there are. And I must have misunderstood. The school can shut the forum down completely to any community flyers. It has not done so. Based on your Tinker argument? No, based on the current policy under the forum analysis. So even if you take it out of Tinker, under forum analysis, the revised 913 is still unconstitutional. And the reason for that is, is it still is content and viewpoint based on its face, never mind to KA. The policy says it still allows flyers that contribute significantly to district instructional programs, and that's what may be distributed. So the school district, under much case law, basically holds that it gets to pick and choose which flyers are allowed and which are not. For example, when they testified as to the meaning of the policy, only materials going home must promote the educational benefit of students. That has absolutely no meaning. This court in Gray Grier struck down, they tried there to require the flyers to relate to the educational mission of the school. The court said that's not a standard at all. That's unbridled discretion. Justice Alito said the same thing in the recent Morse case in his concurrence opinion, which I think is a controlling opinion because it's the most narrow. But he also said that the educational mission is an unbridled discretion standard because the school can, as Justice Roberts said in his hearings, they can pick out their friends from the crowd. And so what this does is say, well, we believe that your flyer is related to the, significantly contributes to the educational mission of the school, but yours doesn't. So this policy is not a complete shutdown. It allows both content and viewpoint-based discrimination on its face. And this court in the Child Evangelism Fellowship cases and the Fourth Circuit in the CEF cases, basically held that if you have a standard that allows unbridled discretion, it's unconstitutional, even if it's never applied, because it allows for viewpoint discrimination. And that's exactly what the current policy 913 does, even if it's applied on a forum analysis and even if it's applied to community literature distribution. Interestingly enough, policy 220, which governs student speech, specifically on its face, also carries the same exact standard, that it has to significantly relate to district instructional programs. Well, that allows the school to do what it's doing now. We'll allow certain birthday invitations, certain Christmas party invitations, but not yours. These policies are both content and viewpoint-based on their face, whether we go under tinker or whether we go under forum analysis. Was your client allowed to do some kind of Easter invitation? Am I remembering that correctly? She was not allowed. She wanted to. And we were asking for injunctive relief. If it wasn't just the Christmas flyer, there were activities going on throughout the year and in general to share her faith, but there was an Easter celebration, a Christmas celebration, there's Halloween alternatives, and so there's opportunities throughout the year where a client wants to distribute materials but is not allowed. Is there evidence of other students distributing anything of a religious nature in the school district? I don't believe there's anything in the record. Under JA 100 to about 126 is a sample of flyers that have been allowed. There's been many different types of community groups where they have classes and do food and athletics and all types of things, but I don't know of anything specifically religious. But I think that adds another component here. And I think, you know, one thing, it's the Supreme Court in the conscientious subjector cases and in the employment division versus Smith, they have clearly held that if it's religious speech, that's determined by the speaker. In other words, if I invite you to church and say that's my religious expression, the listener in here, the school district, is not permitted to say, no, that's not religious. We don't think it's religious. Well, it's religious to the speaker, and that's the message that's being communicated. So in closing, Your Honors, I think it's important whether we go under Tinker that this is unconstitutional, and we believe this is student speech because it's the invitation by the student herself, not what happens at the party. And even under forum analysis, this is unconstitutional under case law as both content and viewpoint based on its face. Is there anything on the face of the flyer that mentions the church? There's nothing at all, right? I believe it does. I believe it does. I believe it's at JA100 in the appendix, but I'm pretty sure it does. Yes, it is JA100. It basically says Innovation Church, says where it is, and talks about face painting, ping pong, foosball, snacks, and more. But the church is not. That's across the top or the bottom? It's on the bottom. Kids Rock Night Christmas Party is on the top, and then the name of the church is on the bottom. Thank you, Mr. Kortman. Thank you, Your Honors. Ms. Collins, rebuttal? I just wanted to take a moment to clarify some of the things that you said. Essentially, it seems like what KGA's attorneys are saying is that if a non-school organization can find an elementary school conduit, then their message can be brought into the schoolhouse under a Tinker standard. These are flyers that will be taken outside of the schoolhouse to be reviewed in the community. I think I brought up in the principal argument that would essentially preclude school district review. The application of Tinker would swallow up the school district's authority to regulate the speech of non-school organizations. However, even if it did fall under Tinker, we believe we'd prevail anyway. And that is because this took place in the elementary school context. In the elementary school context, Tinker standard is normally rigorous and somewhat onerous for school districts. It's applied with more of an eye towards the special circumstances of the elementary school where we are charged to watch out more for children's protection. That's a challenge for the courts of appeals, it seems to me, isn't it? Because the Supreme Court has not really distinguished between high schoolers, middle schoolers, and elementary school students, has it? Well, Your Honor, I would argue in a way it has. Because in the Tinker case, the United States Supreme Court said that the speech case, I forget the specific language, or maybe it was the Frazer case, but it has to be interpreted within the specific context of the school. Well, that's Frazer if you're trying to, that's the lewdness carve-out, if you will, to take to the substantial disruption test. Right. Oh, absolutely, Your Honor. If we're not dealing with a carve-out, I mean, I guess I'm asking for your help. Should we make a distinction? Should we say that elementary school students don't have the same rights as 12th graders or 9th graders? Well, I would argue, Your Honor, that that distinction was made in Walker-Sereno by the Third Circuit. Because in that case, the Third Circuit decided as a matter of first impression that the elementary school context is viewed differently. Wasn't that dicta? There has been argument that that's dicta. I guess it will be up to this Court to decide how you want to apply it, if at all. Well, I'm sorry. I don't understand that answer. It's either dicta or it's not. We do not view it as dicta. Why is there in the opinion that would lead you to conclude that it's not dicta? Because the Court said in that opinion that there is no First Amendment violation in the elementary school context absent a consistent pattern of suppression or punishment for expression. And we view that as part of the opinion. All right. So you say it's not a tinker case because it's not student expression. And I'm still not sure I fully apprehend your argument as to why, under a forum analysis, this is not content-based discrimination and or viewpoint-based discrimination. Do you want to try that one more time? Yes, Your Honor. And I think that persuasive authority here would be the Victory Through Jesus case in which a very similar decision was reached by the superintendent upon reviewing a flyer that was not familiar to the school district. The review of the flyer was not based upon any kind of religious content in that case. The flyer, I think, was very similar to the one in this case where it was advertising for an event. A forum analysis was also applied in the Victory Through Jesus case. And the court affirmed the superintendent's decision because it was based upon a general lack of familiarity. It didn't have anything to do with the fact that the superintendent was against the religious group or anything to do with any other viewpoint. And that's certainly not what we intended, and that is not what we did. There was testimony in the district court. The superintendent had no knowledge of the religion of the Innovation Church and really didn't know anything about the church. As far as he was concerned when he was reviewing the flyer, it was any other solicitation material. It's just this one happened to be with an organization where for the elementary school children, he couldn't guarantee the quality of the chaperones. He couldn't guarantee the quality of the food. This was not. And he could guarantee those things at the bowling alley and the pizza shop and the basketball league and all the other multifarious organizations. I understand your concern, Your Honor. I think in those circumstances, the organizations were known to the school, and the school knew about the quality of the event, which is different here because the organization was unknown to the school. So this would be similar to the Victory Through Jesus case. And also the Mueller case, we submit that to the court as persuasive authority here in the Seventh Circuit where the court decided that a forum analysis should be applied when the student distributed a non-expressive flyer to attend a church organization. The facts are very similar, and a forum analysis was applied. What was the flyer there? What was the content of the flyer there? The flyer was just a simple come to this church party. I mean, there was no – very different from the Slaughterbat case where the flyer had the seven stages of the cross, which was clear religious leafleting. In the Mueller case, it was just a plain solicitation to attend a church event with no expressive content, just like any other non-school organization with distributed flyer. Thank you, Ms. Collins. Thank you. Thank you, Mr. Corbin. The case was very well argued. We'll take it under advisement.